IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | CIRCUIT CITY STORES, INC., *et al*., | Case No. 08-35653-KRH |
| | | Chapter 11 |
| | Debtors. | Jointly Administered |

CIRCUIT CITY STORES, INC.,

        Plaintiff,

                                    APN 10-03068-KRH

MITSUBISHI DIGITAL ELECTRONICS
AMERICA, INC.,
*et al*.,

        Defendants.

## MEMORANDUM OPINION

Before the Court in this adversary proceeding is the Debtors' Motion for Partial Summary Judgment ("the Motion") filed August 2, 2010, with respect to (i) the Debtors' objection to claims numbered 132 and 12,300 filed by Mitsubishi Digital Electronics America, Inc. ("Mitsubishi") and (ii) the Debtors' complaint against Mitsubishi and The Insurance Company of the State of Pennsylvania ("The Insurance Company of Pennsylvania"). Defendant Mitsubishi filed its opposition to the Motion on August 24, 2010, in which Defendant The Insurance Company of Pennsylvania joined. Hearing on the Motion was conducted on August 31, 2010.

Central to the Motion is whether Defendants may both (i) claim an administrative expense under § 503(b)(9) of the Bankruptcy Code for the value of goods it delivered to the

Debtors during the twenty days immediately preceding the date the Debtors filed their bankruptcy petitions and also (ii) utilize the value of those same goods as a Bankruptcy Code § 547(c)(4) new value defense to a preference claim under § 547 of the Bankruptcy Code. The Court holds that because the payment of a creditor's Bankruptcy Code § 503(b)(9) administrative claim for the value of goods transferred to a debtor in the twenty-day period immediately preceding the commencement of a bankruptcy case is an "otherwise unavoidable transfer" as that term is used in § 547(c)(4)(B) of the Bankruptcy Code, the recipient of such a payment is not entitled to utilize the value of those same goods as the basis for a new value defense under § 547(c)(4) of the Bankruptcy Code.

## PROCEDURAL BACKGROUND

The Debtors, Circuit City Stores, Inc., *et al.*,[1] each filed a voluntary petition in the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") under Chapter 11 of the Bankruptcy Code[2] on November 10, 2008 (the "Petition Date"). The Debtors jointly operated as a specialty retailer of consumer electronics. As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico. The Debtors continued to operate after the Petition Date as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

---

[1] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., PRAHS, Inc., XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. The Court entered an order on November 10, 2008, granting the Debtors' motion for joint administration of these bankruptcy cases.

[2] 11 U.S.C. §§ 1101-1174. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

2

Soon after the Petition Date, the Debtors filed a motion seeking entry of an order establishing a bar date for filing requests for payment of administrative expense claims under §§ 105 and 503(b)(9) of the Bankruptcy Code. 11 U.S.C. §§ 105 and 503(b)(9). On November 12, 2008, this Court entered the Order Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Under Bankruptcy Code Sections 105 and 503(b)(9) and Approving Form, Manner and Sufficiency of Notice of the Bar Date Pursuant to Bankruptcy Rule 9007. That order established 5:00 p.m. (PT) on December 19, 2008, as the deadline for filing proofs of claim asserting a § 503(b)(9) administrative priority.

On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at all of the Debtors' remaining retail locations. As of March 8, 2009, the going out of business sales had been completed. On September 29, 2009, the Debtors and the Creditors' Committee[3] filed their First Amended Joint Plan of Liquidation. The disclosure statement was approved by order entered September 24, 2009. A Second Amended Joint Plan of Liquidation was filed on August 9, 2010, and an order confirming the Debtors' Modified Amended Second Joint Plan of Liquidation was entered on September 14, 2010 (the "Plan"). The confirmed Plan substantively consolidated the Debtors' bankruptcy estates and established a liquidating trust to distribute all of the Debtors' assets under Chapter 11 of the Bankruptcy Code. The confirmed Plan vested the right to continue this adversary proceeding in the liquidating trust upon the effective date of confirmation.[4]

---

[3] On November 12, 2008, the Office of the United States Trustee for the Eastern District of Virginia appointed a statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "Creditors' Committee") (Docket No. 116).

[4] Hereinafter, all references to the Debtors will also encompass the rights to which the Circuit City Liquidating Trust succeeded.

**JURISDICTIONAL STATEMENT**

The court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (F) and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**UNDISPUTED FACTS**

On November 18, 2008, Mitsubishi timely filed a claim which was designated as claim number 132 on the Debtors' claim register. The claim asserted an administrative priority under § 503(b)(9) of the Bankruptcy Code in the amount of $4,965,976.18 for the value of goods sold by Mitsubishi to the Debtors during the twenty-day period prior to the Petition Date (the "503(b)(9) Claim"). Based upon a reconciliation subsequently performed by the Debtors and Mitsubishi, the parties determined that the actual value of the goods received by the Debtors during the twenty-day period was $4,962,320.77. The parties agreed that the 503(b)(9) Claim should be reduced to that lesser amount. Except for Count IX of the instant adversary proceeding, which relates to the possible setoff of some alleged receivables, the Debtors do not object to the payment of the agreed amount of Mitsubishi's 503(b)(9) Claim.[5]

On October 13, 2009, the Debtors filed their Fifty-First Objection to Certain 503(b)(9) Claims, in which the Debtors requested the Court to *temporarily* disallow, among other claims, Mitsubishi's 503(b)(9) Claim pursuant to § 502(d) of the Bankruptcy Code on the grounds that Mitsubishi was the recipient of certain alleged preferential transfers avoidable under § 547 of the

---

[5] Mitsubishi also filed Claim No. 12,300, which contained a number of components. Pursuant to a settlement order entered on March 18, 2010, Mitsubishi has been deemed to have timely filed a secured claim in the amount of $3,110,267.24, the 503(b)(9) Claim, and a non-priority general unsecured claim in the amount of $7,181,834.23. All other claims by Mitsubishi were withdrawn.

4

Bankruptcy Code. On January 6, 2010, the Court entered an order temporarily disallowing Mitsubishi's 503(b)(9) Claim. (Docket No. 6228)[6]

On May 11, 2010, the Court entered an order approving a settlement agreement between the Debtors and Mitsubishi establishing a fully funded reserve for the exclusive benefit of Mitsubishi that is sufficient to pay the agreed amount of Mitsubishi's 503(b)(9) Claim.[7] Once the issue central to the Motion before this Court has been resolved, the allowed amount of Mitsubishi's 503(b)(9) Claim can be determined, and the allowed amount of Mitsubishi's 503(b)(9) Claim will be paid in full from the funds set aside in this reserve.

On April 1, 2010, the Debtors initiated this adversary proceeding (the "Adversary Proceeding") by filing a complaint against Mitsubishi and The Insurance Company of Pennsylvania (the "Complaint"), wherein the Debtors seek the return of certain transfers made by the Debtors to Mitsubishi in the ninety-day period prior to the Petition Date.[8] The Debtors alleged that those transfers made during the Preference Period totaling $6,698,209.84 (the "Preferential Transfers") are avoidable preferential transfers under § 547 of the Bankruptcy Code and, as such, are recoverable under § 550 of the Bankruptcy Code.

---

[6] The Court ruled that the Debtors could use § 502(d) of the Bankruptcy Code to temporarily disallow the payment of certain § 503(b)(9) administrative expense claims in order to preserve the issue of whether § 503(b)(9) claimants were entitled both (i) to receive payment on their asserted administrative claims for the prepetition delivery of goods and also (ii) to use the delivery of those same goods as the basis for asserting a new value defense under 11 U.S.C. § 547(c)(4). *In re Circuit City Stores, Inc.*, 426. B.R. 560 (Bankr. E.D. Va. 2010). The Debtors were concerned that claimants would effectively receive credit for the delivery of their goods twice. However, the new value defense issue was not then ripe for Court adjudication. Delaying the allowance (at least temporarily) of the claimants' administrative claims permitted these bankruptcy estates to address both issues in the appropriate judicable context.

[7] As a result of payments made by The Insurance Company of Pennsylvania to Mitsubishi pursuant to a policy for credit insurance, The Insurance Company of Pennsylvania holds or is subrogated to Mitsubishi's rights with regard to a portion of the 503(b)(9) Claim. *See* Docket No. 7519. On or about November 17, 2009, a portion of the 503(b)(9) Claim was transferred from Mitsubishi to The Insurance Company of Pennsylvania. *See* Docket No. 5807.

[8] The ninety-day period immediately preceding the Petition Date is referred to as the "Preference Period." The "usual" ninety-day Preference Period established by 11 U.S.C. § 547(b)(4)(A) may be extended to as far out as one year prior to the Petition Date, *see* 11 U.S.C. § 547(b)(4)(B), but only if the creditor at the time of the transfer was an insider, as defined in 11 U.S.C. § 101(31). There is no contention in this Adversary Proceeding that Mitsubishi is an insider.

In its answer filed July 6, 2010, Mitsubishi raised multiple affirmative defenses to the Complaint. Among the defenses enumerated, Mitsubishi asserts that the amounts sought by the Debtors must be reduced because, subsequent to the Preferential Transfers, Mitsubishi provided new value to the Debtors within the meaning of § 547(c)(4) of the Bankruptcy Code (the "New Value Defense"). Mitsubishi contends that the value of the goods that comprise the agreed amount of its 503(b)(9) Claim can also be used in support of its New Value Defense in order to bar the Debtors from recovering the Preferential Transfers.[9]

On August 2, 2010, the Debtors filed the Motion for partial summary judgment, requesting that "Mitsubishi be precluded from availing itself of the new value defense under section 547(c)(4) of the Bankruptcy Code with respect to any Product for which it receives payment on account of its 503(b)(9) Claim." Essentially, the Debtors argue that Mitsubishi may either (i) claim an administrative expense under § 503(b)(9) of the Bankruptcy Code for the value of the goods received by the Debtors during the twenty-day period immediately preceding the Petition Date, or (ii) utilize the value of those same goods as a § 547(c)(4) New Value Defense to a claim under § 547 of the Bankruptcy Code for the avoidance of the Preferential Transfers. The Debtors assert that Mitsubishi may not do both.

## SUMMARY JUDGMENT STANDARD

Part VII of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") applies in adversary proceedings. Bankruptcy Rule 7056 makes Rule 56 of the Federal Rules of Civil Procedure ("the "Civil Rules") applicable in adversary proceedings. *See* Fed. R. Bankr. P. 7056.

---

[9] Simultaneously with its answer, Mitsubishi filed a motion to dismiss Count VI of the Debtors' Complaint, which count was based upon theories of unjust enrichment and quasi-contract, for failure to state a claim upon which relief could be granted. The Debtors argued that the motion to dismiss was premature, since enforceability of the contracts at issue had not yet been determined. That motion to dismiss was denied at the August 31, 2010, hearing without prejudice. Mitsubishi also asserted two counterclaims against the Debtors with its answer. One counterclaim is based upon recoupment and the other is based upon a right of setoff for certain unpaid warranty obligations. The issues raised in the counterclaims are not currently before the Court.

6

Pursuant to Civil Rule 56(a), "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b).

The standard for entry of summary judgment under Bankruptcy Rule 7056 and Civil Rule 56 is well established, and summary judgment "is favored as a mechanism to secure the 'just, speedy and inexpensive determination' of a case" when the requirements of Civil Rule 56 are met. *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1322-23 (4th Cir. 1995) (*quoting* Fed. R. Civ. P. 1). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (as incorporated by Fed. R. Bankr. P. 7056).

The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether this showing has been made, the Court must assess the evidence in the light most favorable to the party opposing the motion. *See, e.g., Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Summary judgment is appropriate only where there are no "disputes over facts that might affect the outcome of the suit," but not mere peripheral or irrelevant facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In this case, the Court finds that the Debtors have met the initial burden of demonstrating that there is no issue of material fact in connection with their Motion for partial summary judgment. If, as here, the moving party demonstrates that there is no genuine issue of material fact, the burden then shifts to the non-moving party to produce evidence to demonstrate that there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts

7

showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); *see also RGI, Inc. v. Unified Indus., Inc.,* 963 F.2d 658, 661 (4th Cir. 1992).

Mitsubishi contends that summary judgment is not appropriate because no discovery has been commenced and there is nothing in the factual record that would establish the Debtors' claims. However, Mitsubishi has not provided the Court with any evidence from which the Court may deduce that there is some genuine issue of material fact with respect to its New Value Defense. Rather, Mitsubishi asserts that the Debtors are asking the Court to rule on a set of hypothetical facts. This position flies in the face of the purpose of summary judgment. As the Supreme Court pronounced in *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986):

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. Rule Civ. Proc. 56(e). . . . *See also* Advisory Committee Note to 1963 Amendment of Fed. Rule Civ. Proc. 56(e), 28 U.S.C. App., p. 626 (purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

475 U.S. at 586-87 (citations and footnote omitted).

The material facts alleged by the Debtors with respect to Mitsubishi's New Value Defense are uncontroverted. Those facts are sufficient to enable the Court to render partial summary judgment on the pure legal issue presented. Mitsubishi has failed to demonstrate that there is a genuine need for trial on its New Value Defense.[10]

---

[10] The only material fact that could conceivably exist is whether some portion of the new value upon which Mitsubishi will rely as part of its New Value Defense falls outside its 503(b)(9) Claim. However, Mitsubishi has not

Mitsubishi argues further that a decision on the narrow legal issue presented in the Debtors' Motion is not ripe and would constitute an advisory opinion. Mitsubishi contends that any ruling on its New Value Defense must await the eventual allowance of its 503(b)(9) Claim and the actual payment of that claim in cash. This argument ignores the Court's prior rulings. Mitsubishi's 503(b)(9) Claim was only temporarily disallowed until the entitlement to its New Value Defense could be adjudicated. A fully funded reserve has been established to ensure payment of Mitsubishi's allowed 503(b)(9) Claim once that adjudication has been made. Mitsubishi in essence presents the classic Catch-22.[11] The 503(b)(9) Claim cannot be paid until Mitsubishi's entitlement to assert its affirmative New Value Defense has been resolved; and the New Value Defense cannot be resolved until the 503(b)(9) Claim is paid. The issues are inextricably intertwined and must be decided together in the context of this Adversary Proceeding. The Court thus finds that this issue is ripe for decision.

## ANALYSIS

In this Adversary Proceeding, the Debtors seek to avoid and recover, pursuant to 11 U.S.C. § 547, Preferential Transfers allegedly made to Mitsubishi during the Preference Period. Section 547(b) of the Bankruptcy Code sets forth the elements that the Debtors[12] must establish in order to recover an avoidable preference.[13] The Debtors have alleged each of the necessary elements of § 547(b).

---

stated otherwise, nor has it presented any evidence contesting that point. Accordingly, entry of partial summary judgment is appropriate. Fed. R. Civ. P. 56(e)(2).

[11] *Catch-22* is a satirical novel authored by Joseph Heller that was first published in 1961. A "Catch-22" is any absurd arrangement that puts a person in a double bind, preventing the resolution of a problem or situation.

[12] In a Chapter 11 case under the Bankruptcy Code, a debtor in possession has, with a few exceptions not applicable here, all the rights and powers of a trustee. *See* 11 U.S.C. § 1107(a).

[13] Under 11 U.S.C. § 547(b), a trustee may avoid any transfer of an interest of the debtor in Property
    (1) to or for the benefit of a creditor;

Section 547(c) of the Bankruptcy Code enumerates exceptions to the avoidance of certain transfers that would otherwise be preferential. Mitsubishi has the burden of proving the nonavoidability of the transfers under § 547(c). 11 U.S.C. § 547(g). One of the exceptions upon which Mitsubishi relies is that set forth in § 547(c)(4). That section provides:

> c) The trustee may not avoid under this section a transfer - -
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor - -
> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; . . . .

The purpose of the exception is fairly obvious and has been thus summarized:

> [T]he legislative history to § 547(c)(4) suggests that the subsequent new value defense was enacted to encourage creditors to replenish the estate by continuing to sell on credit to companies experiencing financial hardship. For trade creditors, who may ship goods to a debtor on a daily basis, the new value defense . . . is perhaps the best protection to the preference demand that inevitably will come once the debtor has filed its Chapter 11 petition. At the risk of grossly oversimplifying the defense, section 547(c)(4) permits creditors to reduce their preference exposure by essentially subtracting the value of the goods shipped subsequent to receipt of the preferential transfers but prior to the petition date from the aggregate preference demand amount.

Paul R. Hage & Patrick R. Mohan, *Is it Still New Value? Application of Section 503(b)(9) to the Subsequent New Value Preference Defense*, 19 J. Bankr. L. & Prac. 4, Art. 7 (2010) (footnote omitted). *See also Field v. Md. Motor Truck Assoc. Workers Comp. Self-Ins. Grp. (In re George*

---

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made--
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if--
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

*Transfer, Inc.),* 259 B.R. 89 (Bankr. D. Md. 2001). The subsequent new value defense encourages lending to troubled debtors while also discouraging a "panic-stricken race to the courthouse." *Charisma Inv. Co., N.V. v. Airport Systems, Inc. (In re Jet Florida Sys., Inc.),* 841 F.2d 1082, 1083 (11th Cir. 1988). The subsequent new value defense is able to accomplish these dual goals and at the same time further the equal treatment of creditors because it applies only where "the bankruptcy estate has been enhanced by the creditor's actions." *TI Acquisition, LLC v. S. Polymer, Inc. (In re TI Acquisition, LLC)*, 429 B.R. 377 (Bankr. N.D. Ga. 2010).

Mitsubishi has raised the § 547(c)(4) New Value Defense on account of goods it delivered to the Debtors subsequent to its receipt of the alleged Preferential Transfers. Mitsubishi has also made a claim for the payment of those same goods under § 503(b)(9) of the Bankruptcy Code. That section provides:

> After notice and a hearing, there shall be allowed administrative expenses, . . . including the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9). The Debtors' Motion places before the Court the issue of whether Mitsubishi can utilize a New Value Defense if it also receives payment for its § 503(b)(9) administrative claim where both its New Value Defense and its administrative claim are predicated upon that same recitation of value.

The parties agree that, subsequent to the alleged Preferential Transfers, the Debtors received goods valued at $4,962,320.77 from Mitsubishi in the twenty days prior to the Petition Date. Accordingly, the first element of § 547(c)(4) has been satisfied. The Debtors received subsequent new value from the creditor. The success of Mitsubishi's New Value Defense hinges upon the remaining provisions of § 547(c)(4) of the Bankruptcy Code. The critical provision in the issue before the Court is whether "the debtor did not make an otherwise unavoidable transfer

11

to or for the benefit of such creditor" on account of the new value it received from the creditor. 11 U.S.C. § 547(c)(4)(B).

In this case, the Debtors did make a "transfer to or for the benefit of [the] creditor" on account of the subsequent new value the Debtors received from Mitsubishi. Mitsubishi's argument to the contrary that no such transfer has occurred because it has not yet received payment of its 503(b)(9) Claim is without moment. The statute does not by its terms require repayment of the new value but only a transfer on account thereof. Mitsubishi's 503(b)(9) Claim was not denied. Allowance of the claim was merely deferred in order to enable this Court to consider the "double payment" concerns raised by the Debtors in the context of this preference litigation. The establishment of the reserve fund is absolute. The Debtors have parted with their interest in the monies that have been set aside in the reserve fund for the exclusive "benefit of" Mitsubishi. The stipulated settlement creating the reserve fund for the exclusive benefit of Mitsubishi guarantees that the total amount of Mitsubishi's 503(b)(9) Claim, as ultimately allowed by this Court, will be paid in full. The creation of the reserve fund constitutes a "transfer"[14] "for the benefit of" Mitsubishi within the meaning of § 547(c)(4)(B) of the Bankruptcy Code (the "Transfer for the Benefit of Mitsubishi").

The Court must then apply the third and final element of the subsequent New Value Defense.[15] The use of the double negative in § 547(c)(4)(B) does not render the plain meaning

---

[14] The term "transfer" is broadly defined by the Bankruptcy Code. 11 U.S.C. § 101(54). It includes each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an interest in property. 11 U.S.C. § 101(54)(D).

[15] A recognized split has developed between the Circuits over the interpretation and application of § 547(c)(4)(B). Three of the Circuits that have dealt with this provision have concluded that § 547(c)(4)(B) of the Bankruptcy Code should be interpreted to mean that the new value must remain unpaid at the end of the preference period in order to be used to offset a creditor's preference exposure. *See generally* Noah Falk, *Section 547(c)(4): The Subsequent New Value Exception Defense to Preferences*, 2004 Norton Ann. Surv. of Bankr. Law Part I, § Q (October 2004). *See also Kroh Bros. Dev. Co. v. Cont'l Constr. Eng'rs Inc. (In re Kroh Bros. Dev. Co.)*, 930 F.2d 648, 653 (8th Cir. 1991) (new value defense available unless creditor has been paid by the debtor for the goods and services that

of that portion of the statute ambiguous. *Wahoski v. American & Efrid, Inc. (In re Pillowtex Corp.),* 416 B.R. 124 (Bankr. D. Del. 2009); *Boyd v. The Water Doctor (In re Check Reporting Servs.)*, 140 B.R. 425, 434 (Bankr. W.D. Mich. 1992) ("Although [§547(c)(4)] does contain a double negative, this makes the statute *complicated*, not ambiguous. . . . Applying the statute requires several levels of analysis, but each step is clear and the process leads to a single result.") Rather, under what has been labeled the "subsequent advance" approach, § 547(c)(4)(B) of the Bankruptcy Code simply requires a creditor to prove that the new value extended has not been repaid with an otherwise unavoidable transfer. *Wahoski v. American & Efrid, Inc. (In re Pillowtex Corp.),* 416 B.R. 124 (Bankr. D. Del. 2009). Under this approach, whenever a subsequent advance is made by a debtor to pay for new value extended after receipt of a preferential transfer, the New Value Defense is only available if the new value was repaid with a subsequent transfer that is itself avoidable.

The Fourth Circuit Court of Appeals adopted the subsequent advance approach in *Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.*), 412 F.3d 545 (4th Cir. 2005). There the Fourth Circuit held that:

> [a] creditor is entitled to offset preference payments through the extension of new value to the debtor so long as the debtor does not make *an otherwise unavoidable transfer* on account of the new value. Thus, even if [debtor] repaid all of the new value, under the plain terms of the statute whether those payments deprive [creditor] of its new value defense depends on whether the payments were *otherwise unavoidable*."

---

comprised the new value). Conversely (and consistent with the approach adopted by the other Circuits that have considered the issue), the District Court for the Eastern District of Virginia, in a decision that was affirmed by the Fourth Circuit, concluded that "the requirement that the new value remain unpaid is [an] inaccurate and confusing paraphrase" and that "[t]he proper inquiry is whether the new value has been paid for by an otherwise unavoidable transfer.") *Chrysler Credit Corp. v. Hall*, 312 B.R. 797, 804 (E.D. Va. 2004), *aff'd*, 412 F.3d 545 (4th Cir. 2005) (citation omitted).

13

*Id*. at 552.[16] Thus, under the holding of *JKJ*, the Transfer for the Benefit of Mitsubishi on account of its 503(b)(9) Claim for the goods it supplied to the Debtors prepetition bars it from asserting a New Value Defense based upon the delivery of those same goods if the Transfer for the Benefit of Mitsubishi is an "otherwise unavoidable transfer."

The answer to the question whether the Transfer for the Benefit of Mitsubishi on account of its 503(b)(9) Claim is otherwise unavoidable turns on the provisions of the Bankruptcy Code governing the avoidance powers of a trustee. The applicable sections are 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b) and 724(a). The Fourth Circuit did not evaluate whether the transactions at issue in *JKJ* were avoidable. Rather, the Fourth Circuit remanded the case to the bankruptcy court for that factual determination. In the instant Adversary Proceeding, the Court need not examine every facet of the various transactions between Mitsubishi and the Debtors in order to discern whether the transfer at issue is "otherwise unavoidable." The inquiry is confined to the Transfer for the Benefit of Mitsubishi on account of its 503(b)(9) Claim.

The Court has analyzed the applicable avoidance provisions set forth in the Bankruptcy Code. Sections 544, 547, 548 and 553(b) of the Bankruptcy Code apply only to transfers made before the Petition Date. Those Bankruptcy Code sections are inapplicable to the satisfaction of administrative priority claims, which by definition are paid during the pendency of a bankruptcy

---

[16] In its opinion in *JKJ*, the District Court for the Eastern District of Virginia relied upon Professor Countryman's explanation of § 547(c)(4)(B) of the Bankruptcy Code:
> If the debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, *and if these subsequent payments are themselves voidable as preferences* (or on any other ground), then under section 547(c)(4)(B) the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the *earlier* voidable preference. On the other hand, the debtor's subsequent payments might not be voidable on any other ground and not voidable under section 547, because the goods and services were given C.O.D. rather than on a credit, or because the creditor has a defense under section 547(c)(1), (2), or (3). In this situation, the creditor may keep his payments but has no section 547(c)(4) defense to the trustee's action to recover the earlier preference. In either event, the creditor gets credit only once for goods and services later supplied.

*Chrysler Credit Corp. v. Hall (In re JKJ Chevrolet, Inc.)*, 312 B.R. 797, 804 n.2 (E.D. Va. 2004) (*quoting* Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand. L. Rev. 713, 788 (May 1985).

14

case and not before its filing.[17]  11 U.S.C. § 503.  Section 545 and 724(a) of the Bankruptcy Code are inapplicable because those sections apply only to the fixing of a lien.  No lien is at issue in the instant Adversary Proceeding.

This leaves only § 549 of the Bankruptcy Code, which does apply to the avoidance of postpetition transfers.  That section of the Bankruptcy Code permits a trustee to avoid a transfer made after the petition date if the transfer was not authorized by the Bankruptcy Code or if the transfer was not authorized by the bankruptcy court.  Here, establishment of the reserve fund for the exclusive benefit of Mitsubishi in order to facilitate payment of its 503(b)(9) Claim is both authorized by the Court and by the Bankruptcy Code.  *See In re Atcall, Inc.*, 284 B.R. 791, 798 (Bankr. E.D. Va. 2002).  Accordingly, the Transfer for the Benefit of Mitsubishi is not avoidable under § 549 of the Bankruptcy Code.

Because the Transfer for the Benefit of Mitsubishi to facilitate payment of Mitsubishi's 503(b)(9) Claim is not avoidable through the use of §§ 544, 545, 547, 548, 549, 553(b) or 724(a) of the Bankruptcy Code, it is an "otherwise unavoidable transfer" that § 547(c)(4)(B) of the Bankruptcy Code negates for qualification as new value.  Mitsubishi can get credit only once for the goods it supplied to the Debtors in the twenty-day period preceding the Petition Date.  As a matter of law, the Transfer for the Benefit of Mitsubishi on account of its 503(b)(9) Claim precludes Mitsubishi from utilizing the value of the same goods that comprise the 503(b)(9) Claim a second time as the basis for asserting a New Value Defense under § 547(c)(4) of the Bankruptcy Code.[18]

---

[17] Notice and a hearing are required to approve the payment of an administrative expense under § 503(b)(9) of the Bankruptcy Code.  *See* 11 U.S.C. § 503(b).

[18] Mitsubishi also argues that this otherwise unavoidable transfer is inapplicable because it occurred postpetition. This argument is also without merit. The Fourth Circuit in *Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.)*, 412 F.3d 545 (4th Cir. 2005), clearly stated that "post-petition transfers may be considered under section 547(c)(4)(B)." 412 F.3d at 553, n.6.  *See also Moglia v. Am. Psych. Ass'n (In re Login Bros. Book Co.)*, 294 B.R.

15

The result reached by this Court is similar to that reached by the Bankruptcy Court for the Northern District of Georgia in *TI Acquisition, LLC v. Southern Polymer, Inc. (In re TI Acquisition, LLC),* 429 B.R. 377 (Bankr. N.D. Ga. 2010). There the Chapter 11 debtor, a manufacturer of carpeting and textiles, had been supplied with materials within the twenty days prior to the petition date. The creditor that supplied the materials sought and received an order allowing its § 503(b)(9) administrative claim for the amounts due on account of the materials supplied within the twenty-day period. The court ordered that payment of the administrative claim should be deferred until the resolution of the debtor's preference action against the supplier. A fund was created to cover the amount required for the payment of the § 503(b)(9) claim.

In the preference action, the supplier sought to use the Bankruptcy Code's § 547(c)(4) New Value Defense. The debtor filed a motion for partial summary judgment to resolve the issue of whether the creditor was entitled to use the materials furnished as both the basis for an administrative claim and as a defense to the preference action. The court ruled that the creditor was not so entitled.

In reaching its conclusion in *TI Acquisition*, the court compared the interaction between Bankruptcy Code §§ 547(c)(4) and 503(b)(9) to the interaction between reclamation claims and Bankruptcy Code § 547. The seminal case, the court noted, was *In re Phoenix Restaurant Group, Inc. v. Proficient Food Co. (In re Phoenix Restaurant Group)*, 373 B.R. 541 (M.D. Tenn. 2007). In *Phoenix*, the district court ruled that the supplier had the right either to reclaim the

---

297, 300 (Bankr. N.D. Ill. 2003) ("[B]oth the plain language and policy behind the statute indicate that *the timing of a repayment of new value is irrelevant*.") (emphasis added).

goods or to have the reclamation claim given an "enhanced" priority status, but not both.[19] The bankruptcy court in *TI Acquisition* held that § 503(b)(9) claims (like reclamation claims that will be paid in full) should be treated in the same manner.[20]

The court in *TI Acquisition* concluded that the dual policy considerations underlying § 547(c)(4), of encouraging lending to troubled debtors and of promoting equality of treatment among creditors, were best fostered by allowing either a § 503(b)(9) claim or the use of § 547(c)(4)'s New Value Defense, but not both:

> The new value exception fosters these objectives because it limits the defense to the extent by which the bankruptcy estate has been enhanced by the creditor's actions. *See, e.g., In re Kroh Bros. Dev. Co.*, 930 F.2d at 654 ("The availability of the defense, then, depends on the ultimate effect on the estate"); and *In re Jet Fla. Sys., Inc.*, 841 F.2d at 1084 ("Thus, courts have generally required a transfer which fits within the subsequent advance exception to provide the debtor with a material benefit"). If the estate is not enlarged, no new value has been given. Thus, [supplier's] delivery of goods to Debtor pre-petition enlarged the Debtor's estate. Upon full payment to [supplier], the Debtor's estate is no longer enlarged by the delivery. Therefore, [supplier] has no new value for which it has yet to receive full credit and should not be entitled to the new value defense.

429 B.R. at 384.

To allow a supplier of goods to a debtor to use the delivery of the same materials as the basis for both a § 547(c)(4) defense and a § 503(b)(9) administrative claim would not give equal

---

[19] *Phoenix* was decided prior to the enactment of § 503(b)(9) and was based upon a seller's reclamation rights as provided in a previous version of § 546(c) of the Bankruptcy Code. In 2005 Congress made extensive changes to the Bankruptcy Code by enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005). Prior to BAPCPA, if a court denied a seller a valid right to reclaim its goods in a bankruptcy case, the court was required to provide the seller with an administrative claim or a junior lien. Among the many amendments made by BAPCPA, Congress deleted former subsection (c)(2) from Bankruptcy Code § 546(c) and replaced that subsection with an entirely new provision. As a result, Bankruptcy Code § 546(c) no longer expressly gives the court a choice between allowing reclamation or an administrative claim.

[20] The court in *TI Acquisition* noted that it did not agree with the analysis contained in *Commissary Operations v. DOT Foods Inc., (In re Commissary Operations)*, 421 B.R. 873, 877-79 (Bankr. M.D. Tenn. 2010), in which the court found that reclamation claims and claims made pursuant to § 503(b)(9) were dissimilar and should be treated differently for purposes of § 547(c)(4) analysis. Additionally, the court in *TI Acquisition* distinguished critical vendor claims from § 503(b)(9) claims, whereas the court in *Commissary Operations* had analogized the two. This Court agrees with the analysis of the court in *TI Acquisition* in both of these regards.

17

treatment to all creditors. The supplier would be receiving, in essence, a double payment. The estate would be required to fund the administrative claim but would be unable to pursue the preference action.

## CONCLUSION

Having reviewed the facts, the law, and the policy behind the law, the Court is persuaded that Mitsubishi may either (i) claim an administrative expense under § 503(b)(9) of the Bankruptcy Code for the value of the goods received by the Debtors during the twenty days immediately preceding the Petition Date or (ii) utilize the value of those same goods as a § 547(c)(4) New Value Defense to a preference claim under § 547 of the Bankruptcy Code. However, Mitsubishi may not do both. The Court holds that the creation of the reserve fund constitutes an otherwise unavoidable transfer for the exclusive benefit of Mitsubishi on account of its 503(b)(9) Claim, thus making the preference defense unavailable to Mitsubishi under the plain meaning of § 547(c)(4)(B) of the Bankruptcy Code. A contrary ruling would contravene the dual goals of the Bankruptcy Code of encouraging trade creditors to continue dealing with troubled businesses and of furthering equal treatment of creditors.

For these reasons, the Debtors' Motion for partial summary judgment will be granted.

A separate order shall issue.

ENTERED: _____

                                              /s/ Kevin R. Huennekens
                                      UNITED STATES BANKRUPTCY JUDGE

Copies to:

Gregg M. Galardi
Ian S. Fredericks
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P. O. Box 626
Wilmington, DE  19899-0636

Douglas M. Foley
Sarah Beckett Boehm
McGuireWoods LLP
9000 World Trade Center, 101 W. Main St.
Norfolk, VA  23510

James A. Pardo, Jr.
John F. Isbell
Thaddeus D. Wilson
King & Spalding
1180 Peachtree Street
Atlanta, GA  30309

William Gray
Sands Anderson PC
Post Office Box 1998
Richmond, VA  23218-1998

Adam L. Rosen
Silverman Acampora LLP
100 Jericho Quandrangle
Suite 300
Jericho, NY  11753

Jeffrey N. Pomerantz
Andrew W. Caine
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Boulevard
Los Angeles, CA  90067-4100
          and
Robert J. Feinstein
John A. Morris
Pachulski Stang Ziehl & Jones, LLP
780 Third Avenue, 36th Floor
New York, NY  10017
          and
Lynn L. Tavenner
Paula S. Beran
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, VA  23219
          *Counsel for Liquidating Trust*

Robert B. Van Arsdale
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA  23219